IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CHRISTOPHER WILLIAMS                                                                    PLAINTIFF

v.                              CIVIL NO. 15-2213

NANCY A. BERRYHILL,
Acting Commissioner, Social Security Administration[1]                        DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Christopher Williams, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claims for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under the provisions of Titles II and XVI of the Social Security Act ("Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.   Procedural Background:**

Plaintiff protectively filed his applications for DIB and SSI on August 29, 2012. (ECF No. 11, p. 55). In his applications, Plaintiff alleges disability due to the inability to move his thumbs, the inability to lift more than twenty pounds, and a learning disability. (ECF No. 11, p. 290). Plaintiff alleges an onset date of July 26, 2010. (ECF No. 11, pp. 55, 286). This

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

application was denied initially and again upon reconsideration. (ECF No. 11, pp. 177-83, 185-89).

Thereafter, Plaintiff requested an administrative hearing on his denied applications, and this hearing request was granted. (ECF No. 11, p. 192). Plaintiff's administrative hearing was held on January 24, 2014, in Fort Smith, Arkansas (ECF No. 11, pp. 75-100). Plaintiff was present and was represented by John Willems. Id. Plaintiff and Vocational Expert ("VE") Larry Syfert testified at this hearing. Id. At the time of this hearing, Plaintiff was twenty-seven (27) years old, which is defined as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). (ECF No. 11, p. 78). As for his level of education, Plaintiff earned a high school diploma. Id.

After this hearing, on April 16, 2014, the ALJ entered an unfavorable decision denying Plaintiff's applications for DIB and SSI. (ECF No. 11, pp. 52-70). In this decision, the ALJ found Plaintiff met the insured status requirements of the Act through September 30, 2015. (ECF No. 11, p. 57, Finding 1). The ALJ found Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since July 26, 2010, his alleged onset date. (ECF No. 11, p. 57, Finding 2). The ALJ determined Plaintiff had the following severe impairments: borderline intellectual functioning, depression, and non-dominant hand and thumb pain. (ECF No. 11, pp. 57-59, Finding 3). Despite being severe, the ALJ determined these impairments did not meet or medically equal the requirements of any of the Listings of Impairments in Appendix 1 to Subpart P of Part 404 ("Listings"). (ECF No. 11, pp. 59-61, Finding 4).

The ALJ then considered Plaintiff's Residual Functional Capacity ("RFC"). (ECF No. 11, pp. 61-68, Finding 5). First, the ALJ evaluated Plaintiff's subjective complaints and found his claimed limitations were not entirely credible. Id. Second, the ALJ determined Plaintiff retained the RFC to perform:

2

> light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with the following restrictions: He is able to perform occasional fingering, handling, and operating hand controls with his non-dominant upper extremity. He would be restricted to simple, routine, repetitive tasks in a setting where interpersonal contact is incidental to the work performed. He is able to work under simple, direct and concrete supervision.

Id.

The ALJ then determined Plaintiff was unable to perform his Past Relevant Work ("PRW"). (ECF No. 11, p. 68, Finding 6). The VE testified at the administrative hearing regarding these issues. (ECF No. 11, pp. 93-100). Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs existing in significant numbers in the national economy Plaintiff could perform, such as a conveyor line bakery worker, a blending tank tender, and a laminating machine grader. (ECF No. 11, pp. 68-69, Finding 10). Because jobs exist in significant numbers in the national economy which Plaintiff can perform, the ALJ also determined Plaintiff had not been under a disability, as defined by the Act, from July 26, 2010, through April 16, 2014, the date of the ALJ's decision. (ECF No. 11, p. 69, Finding 11).

Thereafter, on June 11, 2014, Plaintiff requested a review by the Appeals Council (ECF. No. 11, pp. 50-51). The Appeals Council denied this request on August 5, 2015. (ECF No. 11, pp. 5-9). On October 9, 2015, Plaintiff filed the present appeal with this Court. (ECF No. 1). The parties consented to the jurisdiction of this Court on October 29, 2015. (ECF No. 6). This case is now ready for decision.

**II.   Applicable Law:**

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it

adequate to support the Commissioner's decision. Teague v. Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. Blackburn v. Colvin, 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. Miller v. Colvin, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. Id.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); See also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from

doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if she reaches the final stage does the fact finder consider Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.  Discussion:

Plaintiff argues the following issues on appeal: 1) the Commissioner's decision should be reversed, and an award of benefits entered, because Plaintiff is disabled at step three of the sequential evaluation process pursuant to Listing 12.05(C); 2) the Commissioner failed to fully and fairly develop the record; 3) the ALJ afforded the non-examining state agency physician's opinions great weight, while not addressing the opinions of Dr. Spray, who examined Plaintiff; and 4) the Commissioner's decision should be reversed, and an award of benefits entered, because Plaintiff is disabled at step five of the sequential evaluation process pursuant to Dr. Spray's findings.. (ECF No. 9). Upon review of these claims, this Court agrees with Plaintiff's second argument and finds the ALJ failed to fully and fairly develop the record. Accordingly, this Court will only address this argument for reversal.

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This is particularly true when Plaintiff is not represented by counsel. Payton v. Shalala, 25 FG.3d 684, 686 (8th Cir. 1994). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case.

Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 1989). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." Mans v. Colvin, No. 13-CV-2103, 2014 WL 3689797 at *4 (W.D. Ark., July 24, 2014) (quoting Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994).

    The most troubling aspect of the development of the evidence in Plaintiff's case is the appearance of some type of attempt by the non-examining state-agency consultant, Dr. Sheri Simon, Ph.D., and the consultative examiner, Dr. Robert Spray, Ph.D., to reconcile the contents of their opinions on the record. Dr. Spray examined Plaintiff on February 27, 2013. (ECF No. 11, pp. 414-18). The record indicates that Dr. Spray submitted his opinion after consulting with Plaintiff, and then submitted a second revised opinion after "vendor feedback was prepared and vendor [was] asked to review information." (ECF No. 11, p. 134). Dr. Simon submitted a letter to Dr. Spray on March 18, 2013, which requested that Dr. Spray submit a revised report to address issues raised in the letter. (ECF No. 11, p. 413). Based on the contents of the letter it appears Dr. Spray originally diagnosed Plaintiff with "MMR," presumably mild mental retardation, after his examination of Plaintiff. Id. Dr. Simon stated, "While [Plaintiff] reports an educational history consistent with MMR, we are unable to verify that as schools have not

6

provided records." (ECF No. 11, p. 413). Dr. Simon also stated in her own report that "Attempts to get school records provided only one report card with poor grades for grades 9-10. There is no report of IEP or lowered IQ in the minimal school records received." (ECF No. 11, p. 134). It is clear to this Court that Dr. Simon reached her opinion, and then persuaded Dr. Spray to revise his opinion, based in large part on the absence of school records.

School records were supplied to the Administration two months after Dr. Simon issued her opinion and Dr. Spray issued his revised his opinion. Plaintiff supplied evidence to this Court which purports to be a description of the evidence contained in Plaintiff's electronic folder maintained online by the Administration. (ECF No. 9-1). This document indicates Plaintiff's attorney at the time provided the Administration with fifty-five (55) pages of Plaintiff's school records, which were inexplicably never made a part of the record. (ECF No. 9-1, p. 3). Those records contain a psychoeducational evaluation, a Greenwood Public Schools Committee Report for Specific Learning Disability, a Greenwood Public Schools Evaluation/Programming Conference Decision Form, a Parent Consent for Initial Placement form for special education and related services, a Greenwood School District Individualized Education Program ("IEP"), and more. Id. Plaintiff's exhibit indicates these records were received by the Administration on May 1, 2013, and therefore should have been available to the ALJ prior to the issuance of his April 16, 2014, decision. (ECF No. 9-1, p. 3).

Plaintiff's school records were never made a part of the record, and the ALJ relied on the absence of these records in his April 16, 2014, decision. The ALJ determined Plaintiff did not have a learning disability at step two of the sequential evaluation process. The ALJ stated as follows:

> However, the undersigned finds that this is also not a severe impairment. [Plaintiff] has a history of poor grades at Greenwood High School, with a GPA

7

> of 1.46 and a class rank near the bottom. However, this is not necessarily indicative of a learning disability or intellectual disability; it could simply be a function of poor effort, excessive absence, or other external reasons. At his December 17, 2012, internal medicine consultative examination, Lawrence Carlson, D.O. diagnosed [Plaintiff] with a history of a learning disability. However, this was based entirely on [Plaintiff's] subjective statements. Dr. Carlson is not a mental health specialist, and he did not administer any cognitive testing. In contrast, State agency psychiatric consultant Robert L. Spray, Ph.D., P.A. examined [Plaintiff] on February 27, 2013. As part of this examination, he administered a WAIS-IV test. This revealed a full-scale IQ of 69, but index scores in the 70s. Dr. Spray found that [Plaintiff's] educational history, developmental history and adaptive functioning were not consistent with an intellectual disability as defined in Listing 12.05(c). [Plaintiff] does, however, have a severe mental impairment of borderline intellectual functioning. This will be analyzed at greater length below.

(ECF No. 11, p. 59) (internal citation omitted). Evidence submitted by Plaintiff indicates the ALJ's decision with regard to Plaintiff's alleged learning disability was based on Dr. Spray's revised opinion because his original had been stricken from the record on March 22, 2013. (ECF No. 9-3, p. 9). In the exhibits supplied by Plaintiff, the Greenwood Public Schools Evaluation/Programming Conference Decision Form, dated October 17, 2002, clearly states:

> "Evaluation data substantiate the existence of a disability consistent with state and federal regulations implementing IDEA. This student has been determined to have the disability of: specific learning disability."

(ECF No. 9-1, p. 12). These records are critical to Plaintiff's claims for benefits and should have been made a part of the record and considered by the ALJ. Plaintiff consistently told his healthcare providers and examiners he had taken special education courses, and testified to same (ECF No. 11, p. 82). The record was not reasonably complete and the ALJ did not have sufficient evidence to make a determination. Despite the ALJ possibly not having access to Plaintiff's school records for some inexplicable reason, the discrepancies in the record discussed herein should have prompted the ALJ to seek out additional evidence for inclusion in the record. Had the ALJ done so, he would have discovered Plaintiff's school records, which

are critical in making a determination in Plaintiff's case. Upon review of the record as a whole, this failure to fully and fairly develop the record was prejudicial to Plaintiff.

### IV.     Conclusion:

Based on the foregoing, on remand the ALJ is ordered to acquire Plaintiff's school records and make them a part of the administrative record for his review. The ALJ shall also acquire Dr. Spray's original, unrevised, mental evaluation of Plaintiff and make it a part of the administrative record for his review. Dr. Spray's revised mental evaluation of Plaintiff shall remain part of the record and be labeled in such a way to indicate that it was a revised medical opinion as of the date it was submitted to the Administration. The ALJ shall send interrogatories to Dr. Spray for purposes of clarifying his two opinions and for a statement as to the reasons for which he revised his opinion to the Administration after Dr. Simon asked him to reconsider. Further, the ALJ shall send Plaintiff to a new consultative examiner, which has not previously examined Plaintiff, for him or her to conduct a new Mental Diagnostic Evaluation and Intellectual Assessment. The new consultative examiner shall be provided with Plaintiff's school records, mental health treatment records, and any other records from Plaintiff's case relevant to the new consultative examiner's evaluation of Plaintiff. The new consultative examiner shall be directed to administer an IQ test, such as the Wechsler Adult Intelligence Scale-IV, or other medically acceptable clinical or laboratory diagnostic test, by which the examiner may measure Plaintiff's Full Scale IQ. The new consultative examiner shall also be directed to administer or perform any other medically acceptable clinical and laboratory diagnostic techniques, which the examiner determines is appropriate to evaluate Plaintiff's alleged cognitive deficits and mental health impairments. Upon receipt of these

9

records and assessments, Plaintiff shall then be given the opportunity to appear and testify at a new administrative hearing regarding his applications for benefits.

The ALJ shall then return to step two of the sequential evaluation process and determine whether any of Plaintiff's medically determinable impairments, either alone or in combination, are severe within the meaning of the ACT. Should the ALJ then determine Plaintiff's impairments or the combination of his impairments are not of a severity to meet or medically equal the criteria of an impairment in the Listings, he shall determine Plaintiff's RFC. Then, should the ALJ determine Plaintiff cannot return to his PRW, the ALJ shall procure the expert testimony of a VE and present to him or her a hypothetical question which includes those impairments that the ALJ finds are substantially supported by the record as a whole and are indicated in the ALJ's RFC determination.

Accordingly, having carefully reviewed the record, the undersigned finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to Plaintiff should be and hereby is reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED this 1st day of March, 2017.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE